NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PRICASPIAN DEVELOPMENT CORPORATION, JACK GRYNBERG and GRYNBERG PETROLEUM COMPANY<br><br>Plaintiffs,<br><br>v.<br><br>GERRARDO GONZALEZ, TERESA CORCORAN-SCHAEFER, DEVYN SCHAEFER, PAULA STERBENS, RETAILERS MANAGEMENT GROUP, INC., BARBARA QUEEN I/T/F JOHN CARR, MARKETING DIGEST, INC., THE CIRCLE M GROUP, INC., CAS SERVICES, INC., SMART MONEY, INC., SOVEREIGN BANK, WELLS FARGO BANK, a Delaware corporation, f/k/a WACHOVIA BANK, JOHN and JANE DOES (1-20) AND ABC COMPANIES (1-10),<br>Defendants. | Hon. Dennis M. Cavanaugh<br><br>**OPINION**<br><br>Civil Action No. 2:13-cv-00549 (DMC)(JBC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the following Motions: i) Motion to Dismiss by Defendant Teresa Corcoran-Schaefer ("Corcoran-Schaefer"); ii) Motion to Dismiss by Defendant Devyn Schaefer ("Schaefer"); iii) Motion to Dismiss by Defendant Paula Sterbens ("Sterbens"); iv) Motion to Dismiss by Defendant CAS Services, Inc. ("CAS"); v) Motion to Dismiss by Sovereign Bank ("Sovereign"); vi) Motion to Dismiss by Wells Fargo Bank ("Wells

1

Fargo")[1]; vii) Cross-Motion to Amend Complaint by Pricaspian Development Corporation, Jack Grynberg, and Grynberg Petroleum Company ("Plaintiffs"); and viii) Second Motion to Amend/Correct Complaint by Plaintiffs. Corcoran-Schaefer, Schaefer, Sterbens, and CAS will be referred to as the "Non-Bank Defendants." Sovereign and Wells Fargo will be referred to as the "Bank-Defendants." Pursuant to FED. R. CIV. P 78, no oral argument was heard. Based on the following and for the reasons expressed herein, the Motions to Dismiss are **granted**, Plaintiffs' Cross-Motion to Amend Complaint is **denied**, and Plaintiffs' Second Motion to Amend/Correct Complaint is **denied**.

## I.   BACKGROUND[2]

Plaintiffs previously obtained a $3,601,947.04 judgment against First Unity, Inc. ("First Unity"), E-Cash, Inc. ("E-Cash"), and Tom Black in the State of Colorado. On or about January 5, 2011, Plaintiffs domesticated this judgment in the State of New Jersey. Plaintiffs subsequently filed a Complaint in this Court against William C. Martucci, Yamel Gonzalez, Barbara Queen, Gary Martucci, Richard Schaefer, Joseph Schaefer, Anthony Sterbens, POS Systems, Inc., First Unity, E-Cash, Manufacturers Marketing Group, Inc., United Grocers Clearing House, Inc., ATM Management, Inc., and ATM Management de Puerto Rico, Inc. (the "Prior Defendants"), alleging fraudulent transfers, unjust enrichment, and conspiracy to commit money laundering to hinder Plaintiffs from executing on their judgment against First Unity and E-Cash. Plaintiffs allege that the Prior Defendants transferred their assets to the Non-Bank Defendants to avoid a possible levy on these assets by Plaintiffs. Specifically, and relevant to the instant Motions, Plaintiffs allege that William Martucci opened a number of business accounts at Sovereign to

---

[1] Plaintiffs have sued "Wells Fargo Bank" as successor to Wachovia Bank's business obligations. "Wells Fargo" is used herein to refer to both Wachovia Bank, N.A. and Wells Fargo Bank, N.A.
[2] The facts from this section are taken from the parties' pleadings.

2

facilitate the transfer of funds to the Non-Bank Defendants. Further, Plaintiffs allege that William Martucci and Barbara Queen held accounts at Wells Fargo for the same purpose.

Plaintiffs filed a Complaint on January 28, 2013, alleging thirteen counts (ECF No. 1). Counts eight and nine allege civil RICO violations against the Non-Bank Defendants. The remaining counts allege state law violations. Corcoran-Schaefer and Schaefer filed Motions to Dismiss on March 12, 2013 (ECF Nos. 33-34). Sterbens filed a Motion to Dismiss on March 19, 2013 (ECF No. 41). CAS filed a Motion to Dismiss on March 22, 2013 (ECF No. 44). Sovereign filed a Motion to Dismiss on April 5, 2013 (ECF No. 61). Wells Fargo filed a Motion to Dismiss on April 8, 2013 (ECF No. 64). Plaintiffs filed an Opposition to Corcoran-Schaefer's and Schaefer's Motions on April 19, 2013 ("Pl.'s Opp'n," ECF No. 71). Plaintiffs filed an Opposition to Sterbens's and CAS's Motions and a Cross-Motion to Amend Complaint on April 22, 2013 ("Pl's Cross-Mot.," ECF No. 72). Corcoran-Schaefer and Schaefer filed Replies to Plaintiffs' Opposition on April 29, 2013 (ECF Nos. 74-75). Sterbens and CAS filed Replies to Plaintiffs' Opposition and Cross-Motion to Amend on April 29, 2013 (ECF No. 76-77). Plaintiffs filed Oppositions to the Bank Defendants' Motions on May 6, 2013 (ECF Nos. 83-84). Sovereign filed a Reply to Plaintiffs' Opposition on May 13, 2013 (ECF No. 89). Wells Fargo filed a Reply to Plaintiffs' Opposition on May 20, 2013 (ECF No. 90). Plaintiffs filed a Second Motion to Amend/Correct Complaint on August 30, 2013 (ECF No. 108). The Non-Bank Defendants collectively filed an Opposition to the Second Motion to Amend/Correct Complaint on September 23, 2013 (ECF No. 111). The Bank Defendants filed Oppositions to the Second Motion to Amend/Correct Complaint on September 23, 2013 (ECF Nos. 112, 114). Plaintiffs filed a Reply to all Opposition to the Second Motion to Amend/Correct Complaint on September 30, 2013 (ECF No. 116).

## II. STANDARD OF REVIEW

### A. Motion to Amend Complaint

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Leave to amend is to be freely granted unless there is a reason for denial, "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182, (1962); see also Arthur v. Maersk, 434 F.3d 196, 204 (3d. Cir. 2006) ("Among the factors that may justify denial of leave to amend are undue delay, bad faith, and futility."). "Where an amended pleading would be futile, that alone is sufficient ground to deny leave to amend." Kanter v. Barella, 489 F.3d 170, 181 (3d. Cir. 2007). "'Futility' of amendment is shown when the claim or defense is not accompanied by a showing of plausibility sufficient to present a triable issue." Harrison Beverage Co. v. Dribeck Importers, 133 F.R.D. 463, 468 (D.N.J. 1990).

### B. Motion to Dismiss for Failure to State a Claim

In deciding a motion under FED. R. CIV. P. 12(b)(6), the District Court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). However, a plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions and a formulaic recitation of the elements of a cause of action will not do." Id. On a motion to dismiss, courts are "not bound to accept as true a legal conclusion couched as a factual

allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). A plaintiff's complaint is subject to the heightened pleading standard set forth in Ashcroft v. Iqbal:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. 662, 678-679 (2009) (quoting Twombly, 550 U.S. at 557, 750).

### III.   DISCUSSION

#### A. Motions to Amend Complaint

#### 1) Plaintiffs' Cross-Motion to Amend Complaint

CAS's Motion to Dismiss argues that Plaintiffs have failed to state a claim against CAS because nowhere in the Complaint do Plaintiffs made a demand for judgment against CAS. Indeed, CAS is only mentioned twice in the Complaint – once in paragraph nine where it is identified as a Defendant, and once in paragraph seventy-two where Plaintiffs allege that "Anthony Sterbens transferred money to his wife, Paula Sterbens, and/or CAS services." In its Cross-Motion to Amend Complaint, Plaintiffs assert that it was a scrivener error to exclude CAS from paragraph seventeen of the Complaint (Pl.'s Cross-Mot. at 16-17). This paragraph lists the Defendants that are to be referred to in the remainder of the Complaint as the "Non-Bank Defendants." Plaintiffs also claim that it was an error not to include CAS in certain "wherefore" clauses of the Complaint that seek judgment against the various Defendants (Id. at 17). Plaintiffs' Proposed First Amended Complaint corrects these deficiencies.

CAS asserts that Plaintiffs' First Amended Complaint is futile because, even if amended,

allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986). A plaintiff's complaint is subject to the heightened pleading standard set forth in <u>Ashcroft v. Iqbal</u>:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

556 U.S. 662, 678-679 (2009) (quoting <u>Twombly</u>, 550 U.S. at 557, 750).

## III.  DISCUSSION

### A. Motions to Amend Complaint

#### 1) Plaintiffs' Cross-Motion to Amend Complaint

CAS's Motion to Dismiss argues that Plaintiffs have failed to state a claim against CAS because nowhere in the Complaint do Plaintiffs make a demand for judgment against CAS. Indeed, CAS is only mentioned twice in the Complaint – once in paragraph nine where it is identified as a Defendant, and once in paragraph seventy-two where Plaintiffs allege that "Anthony Sterbens transferred money to his wife, Paula Sterbens, and/or CAS services." In its Cross-Motion to Amend Complaint, Plaintiffs assert that it was a scrivener error to exclude CAS from paragraph seventeen of the Complaint (Pl.'s Cross-Mot. at 16-17). This paragraph lists the Defendants that are to be referred to in the remainder of the Complaint as the "Non-Bank Defendants." Plaintiffs also claim that it was an error not to include CAS in certain "wherefore" clauses of the Complaint that seek judgment against the various Defendants (<u>Id.</u> at 17). Plaintiffs' Proposed First Amended Complaint corrects these deficiencies.

CAS asserts that Plaintiffs' First Amended Complaint is futile because, even if amended,

5

the Complaint does not adequately state a claim against CAS. To support this assertion, CAS makes the same arguments that the other Non-Defendants make as to why Plaintiffs have failed to state a claim. As discussed below, these arguments are compelling. Thus, it would be futile to allow Plaintiffs to amend the Complaint to make the same arguments against CAS. Accordingly, Plaintiffs' Cross-Motion to Amend Complaint is denied and CAS's Motion to Dismiss is granted.

### 2) Plaintiffs' Second Motion to Amend/Correct Complaint

In the Second Motion to Amend/Correct Complaint, Plaintiffs seek to add a new Defendant, PIC, Inc. ("PIC") and to provide additional factual material. Nothing in the Proposed Second Amended Complaint corrects the deficiencies discussed throughout this Opinion. Further, Plaintiffs' allegations regarding PIC are scarce and almost entirely limited to statements in which PIC is strung together with a number of other Defendants. The main addition occurs in paragraph eighty-six of the Complaint where Plaintiffs allege that "PIC in or around August 2008 received and issued money to William Martucci or entities under his control." This vague statement does not show that Plaintiffs are able to state a claim against PIC. Accordingly, Plaintiffs' Second Motion to Amend/Correct Complaint is denied as futile.

### B. Motions to Dismiss

### 1) Non-Bank Defendants

All of the Non-Bank Defendants essentially make the same arguments in their Motions to Dismiss. Therefore, the Motions will be analyzed together. The Non-Bank Defendants claim that counts eight and nine of the Complaint should be dismissed because Plaintiffs have not adequately stated claims for civil RICO violations. The Non-Bank Defendants assert that once counts eight and nine are dismissed, the basis for suppelemental jurisdiction disappears and thus

the state law claims must be dismissed absent an independent basis of jurisdiction. The Non-Bank Defendants claim that no such jurisdiction exists, as they do not have sufficient contacts with New Jersey.

### a) RICO Claims

RICO authorizes the filing of a lawsuit by "[a]ny person injured in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). Section 1962(c) provides that it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Section 1962(d) provides a cause of action against persons who conspired to violate the substantive provisions of (a), (b), or (c).

To state a claim under 18 U.S.C. §§ 1964(c) and (d), Plaintiffs must show that two separate entities exist: "(1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161 (2001). To prove the existence of an enterprise, Plaintiffs must show: "1) that the enterprise is an ongoing organization with some sort of framework for making or carrying out decisions; (2) that the various associates function as a continuing unit; and (3) that the enterprise [is] separate and apart from the pattern of activity in which it engages." United States v. Pelullo, 964 F.2d 193, 211 (3d Cir. 1992). The definition of "enterprise" includes "both legal entities and illegitimate associations-in-fact." Rusello v. United States, 464 U.S. 15, 24 (1983).

The Non-Bank Defendants argue that Plaintiffs' Complaint fails because it does not distinguish between the RICO person and the RICO enterprise. Plaintiffs assert that "[e]ach individual [D]efendant in this matter is the RICO person while the association of all

7

[D]efendants is the RICO enterprise" and that each individual Defendant is separate and distinct from the enterprise (Pl.'s Opp'n at 6-7). However, to allege the existence of an enterprise, Plaintiffs' Complaint simply states that the "Non-Bank Defendants were members of an enterprise and/or associated with an enterprise that engaged in a pattern of racketeering to conceal money and/or monetary instruments for the benefit of Non-Bank Defendants or entities under their control" (Compl. ¶ 70). This conclusory statement suffers from the same problems that were present in Giles v. Volvo Trucks N. Am., where the court stated the following:

> Plaintiff has not adequately pleaded [the] elements of a civil RICO claim. For example, Plaintiff's only reference to an "enterprise" is his conclusory statement that he has "established that an enterprise exists that undeniably effects interstate commerce" simply by naming VTNA, "an enterprise to which [the Defendants] belong[ ]." Plaintiff has not in any meaningful way described the relationship of the Defendants to one another, nor has he made allegations that they were aware of the existence of their "enterprise" and involvement therein.

551 F. Supp. 2d 359, 368 (M.D. Pa. 2008) (internal citation omitted); see also McCullough v. Zimmer, Inc., 382 F. App'x 225, 231 (3d Cir. 2010) ("Simply listing a string of individuals or entities that engaged in illegal conduct, without more, is insufficient to allege the existence of a RICO enterprise."); In re Ins. Brokerage Antitrust Litig., No. 04-5184, 2007 WL 1062980, at *8 (D.N.J. Apr. 5, 2007) (stating that "courts should reject association-in-fact enterprise allegations which are imprecise, vague, conclusory, and lack both clarity and any degree of specificity").

Further, even if Plaintiffs' Complaint sufficiently pleaded the existence of an enterprise, Plaintiffs have not alleged facts to show that this enterprise was separate from the pattern of activities allegedly engaged in by the Non-Bank Defendants. Plaintiffs argue that "because the individual [D]efendants engaged in illicit money transfers, the RICO person and the RICO enterprise are not the same" (Pl.'s Opp'n at 8). Even if this is true, it does not cure the fact that Plaintiffs have not shown that the enterprise has an independent purpose apart from the criminal actions purportedly taken by the Non-Bank Defendants. See McCullough, 382 F. App'x at 232

(affirming the District Courts' dismissal of the plaintiffs' complaint because "they [did not] allege[] facts that would support an inference that [the] alleged enterprise had any structure or existence separate and apart from [the d]efendants' alleged criminal conduct"). Accordingly, Counts eight and nine of the Complaint are dismissed.

### b) Jurisdiction

Because this Court has decided that Plaintiffs' federal claims must be dismissed, it must decide whether it has jurisdiction over the remaining state law claims. Plaintiffs assert that diversity jurisdiction exists. The Non-Bank Defendants, however, each argue that they do not have sufficient contacts with New Jersey to warrant personal jurisdiction. Because each Non-Defendant makes the same arguments regarding lack of personal jurisdiction, and Plaintiffs make the same arguments in response to each Non-Bank Defendant, this Court will analyze the arguments of all the Non-Bank Defendants together.

The question of whether diversity jurisdiction exists "is determined by examining the citizenship of the parties at the time the complaint was filed." Midlantic Nat. Bank v. Hansen, 48 F.3d 693, 696 (3d Cir. 1995). In cases based on diversity jurisdiction, federal courts have personal jurisdiction over non-resident defendants, "to the extent permissible under the state law of the jurisdiction where the court sits." Trouver Capital Partners, L.P. v. Healthcare Acquisition, Inc., No. CIV. A. 99-3535, 2000 WL 311029, at *2 (E.D. Pa. Mar. 24, 2000) (quoting Grand Entertainment Group, Ltd. v. StarMedia Sales, Inc., 988 F.2d 476, 481 (3d Cir.1993)). Therefore, personal jurisdiction over the Non-Bank Defendants is determined by New Jersey's "long-arm" statute. Starline Optical Corp. v. Caldwell, 598 F. Supp. 1023, 1025 (D.N.J. 1984). New Jersey courts "have construed this rule to permit jurisdiction 'to the outer limits permitted by the due process clause of the United States Constitution.'" Id. (citations omitted). If a defendant is not

present in New Jersey when served, it must have certain "minimum contacts" with the state. Id. "In the context of specific jurisdiction, the minimum contacts inquiry must focus on 'the relationship among the defendant, the forum, and the litigation.'" Lebel v. Everglades Marina, Inc., 558 A.2d 1252, 1255 (N.J. 1989) (quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)). Essentially, this Court must ask whether the Non-Bank Defendants' "conduct and connection with [New Jersey] are such that [they] should reasonably anticipate being haled into court [here]." Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

In the present case, the Complaint alleges that Plaintiffs reside in Colorado and all Non-Bank Defendants reside in New York (Compl. ¶¶ 4, 6-9). Plaintiffs claim that the Non-Bank Defendants have minimum contacts with New Jersey because they "illicitly received transfers of assets from [the Prior Defendants] that originated from First Unity and E-Cash and were located in New Jersey" (Pl.'s Opp'n at 14). Therefore, Plaintiffs argue, "[b]y concealing assets from the reach of Plaintiffs' judgment execution, the [Non-Bank Defendants'] conduct had 'effects' in New Jersey" (Id.). First, Plaintiffs' Complaint does not adequately assert diversity jurisdiction, as Plaintiffs have only listed the *residences* of the parties as opposed to the citizenships.[3] See Smith v. Wildwood Linen, No. CIV 09-6512, 2010 WL 2674503, at *2 (D.N.J. June 30, 2010) ("Allegations of residence are insufficient for purposes of establishing jurisdiction under § 1332."); Guar. Nat. Title Co., Inc. v. J.E.G. Associates, 101 F.3d 57, 59 (7th Cir. 1996) ("When the parties allege residence but not citizenship, the court must dismiss the suit."). Further, even if Plaintiffs did properly allege that the Non-Bank Defendants are citizens of New York and Plaintiffs are citizens of Colorado, they have not shown that the Non-Bank Defendants have

---

[3] This Court notes that because CAS is a corporation, Plaintiffs do properly allege that CAS has its principal place of business in New York. However, as discussed further in the Opinion, Plaintiffs have not shown that CAS has sufficient minimum contacts with New Jersey. Additionally, neither proposed Amended Complaint corrects the failure to allege the citizenships of Corcoran-Shaefer, Shaefer, and Sterbens.

10

sufficient minimum contacts with New Jersey. Plaintiffs have not pleaded the existence of any acts taken by the Non-Bank Defendants that show purposeful availment of New Jersey. Plaintiffs essentially argue that because the Non-Bank Defendants illicitly received funds from the Prior Defendants, and because these funds originated in New Jersey, the Non-Bank Defendants have minimum contacts with New Jersey. However, not only is this connection attenuated, but the Complaint is void of any allegations of acts taken by the Non-Bank Defendants that were directed towards New Jersey. Accordingly, Plaintiffs' state law claims against the Non-Bank Defendants are dismissed.

### 2) Bank Defendants

Counts ten and twelve of the Complaint allege that the Bank Defendants aided and abetted the illicit money transfers and/or cash withdrawals by William Martucci and/or Barbara Queen. Counts eleven and thirteen allege that the Bank Defendants breached their duty to reasonably inform regulatory authorities of the illicit money transfers and/or cash withdrawals. Although both Bank Defendants argue that Plaintiffs have failed to state claims upon which relief can be granted, only Sovereign argues that Plaintiffs have failed to meet the appropriate statute of limitations. However, because this Court finds that Plaintiffs have failed to state their claims, the statute of limitations argument need not be addressed. Therefore, this Court will analyze the claims against the Bank Defendants together.

#### a) Aiding and Abetting Claims

To state a claim for aiding and abetting in New Jersey, a plaintiff must show "(1) the commission of a wrongful act; (2) knowledge of the act by the alleged aider-abettor; and (3) the aider-abettor knowingly and substantially participated in the wrongdoing." Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C., 331 F.3d 406, 415 (3d Cir. 2003). A plaintiff

must show that the defendant "willingly and knowingly" associated himself with the unlawful act – a claim of "actual" or "constructive" knowledge is insufficient. Cafaro v. HMC Int'l, LLC, No. 07-2793, 2009 WL 162285, at *4 (D.N.J. June 10, 2009).

In the present case, Plaintiffs have not adequately pleaded the scienter requirement of the aiding and abetting claims. Plaintiffs allege that the Bank Defendants "knew or had reason to know" of William Martucci's and Barbara Queen's alleged illegal activities (Compl. ¶¶ 87, 101). First, an allegation that the Bank Defendants "had reason to know" about the activities is insufficient under New Jersey law. Further, Plaintiffs do not allege facts that support the notion that the Bank Defendants "knew" about the activities. For example, Plaintiffs' Complaint states that the Bank Defendants failed to take reasonable steps to detect the "suspicious" money transfers (Id. ¶¶ 86, 103). Plaintiffs' Oppositions also contain a number of arguments regarding preventative actions that the Bank Defendants should have taken. Not only do the Oppositions introduce new allegations not raised in the Complaint, but nothing alleged by Plaintiffs shows that the Bank Defendants willingly and knowingly associated themselves with the alleged illegal activities. Accordingly, counts ten and twelve must be dismissed.

### b) Breach of Duty Claims

Plaintiffs concede that they are not customers of either Bank Defendant, but still argue that the Bank Defendants breached a duty to them by failing to reasonably inform regulatory authorities of the illicit money transfers and/or cash withdrawals. The New Jersey Supreme Court has stated that "[a]bsent a special relationship, courts will typically bar claims of non-customers against banks." City Check Cashing, Inc. v. Manufacturers Hanover Trust Co., 764 A.2d 411, 417 (N.J. 2001); see also Brunson v. Affinity Fed. Credit Union, 972 A.2d 1112, 1125 (N.J. 2009) (expressing its "reluctance to impose a duty of care on banks in respect of a total

stranger"). Plaintiffs cling to the fact that a "special relationship" might allow them to sue the Bank Defendants, yet they point to nothing that shows that such a special relationship exists. Instead, Plaintiffs argue that public policy and fairness dictate that the Bank Defendants owed a duty of care to Plaintiffs because the Bank Defendants should not be allowed to ignore the illegal activities of their customers. This argument is unavailing because the special relationship "must be created by agreement, undertaking, or contract." City Check Cashing, Inc., 764 A.2d at 418. Plaintiffs' remaining arguments are premised on the idea that the Bank Defendants violated the duty imposed by them under the Bank Secrecy Act by failing to obtain the requisite customer identification required by 31 C.F.R. § 1020.220. This statute requires banks to implement Customer Identification Programs ("CIPs"), and lists a number of procedures that the CIPs must contain. Plaintiffs have made no allegation that the Bank Defendants failed to implement CIPs. Accordingly, counts eleven and thirteen must be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, the Motions to Dismiss are **granted**, Plaintiffs' Cross-Motion to Amend Complaint is **denied**, and Plaintiffs' Second Motion to Amend/Correct Complaint is **denied**. An appropriate order follows this Opinion.

Dennis M. Cavanaugh, U.S.D.J.

Date:      October 16, 2013
Original:  Clerk's Office
cc:        Hon. James B. Clark U.S.M.J.
           All Counsel of Record
           File

13